**Mayella C. MATTHEW for James G. BUTLER**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services.**

Civ. A. No. 86–1080.

United States District Court, E.D. Pennsylvania.

July 17, 1986.

Terry Fromson, Philadelphia, Pa., for plaintiff.

Barbara Gerolamo, Asst. U.S. Atty., for defendant.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

This action was brought pursuant to 42 U.S.C. § 405(g) for review of a final decision of the defendant, the Secretary of Health and Human Services. On December 26, 1984, Mayella Matthew, the plaintiff, filed an application for surviving child's insurance benefits on behalf of her son, James G. Butler ("the child"), on the account of John L. Daniels ("the wage earner") (Tr. 88–92). The Social Security Administration, upon initial review and reconsideration, determined that the child was not entitled to benefits on the wage earner's account (Tr. 93, 96–99). The plaintiff appealed the Administration's determination and the matter was considered by an Administrative Law Judge ("ALJ") (Tr. 39–45; 51–87). The ALJ also determined that the child was not entitled to insurance benefits on the wage earner's account (Tr. 39–45). The plaintiff sought further review of the ALJ's decision through the Social Security Administration's Appeals Council (Tr. 4–34). The Appeals Council considered and denied plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Secretary (Tr. 2–3). Following the Appeals Council's decision, the plaintiff filed her complaint seeking judicial review by this court.

Presently before the court are cross-motions for summary judgment. For the reasons which follow, the motion of the plaintiff is denied and the motion of the defendant is granted.

Title 42 U.S.C. § 405(g) provides that the findings of the Secretary as to any fact shall be conclusive if supported by substantial evidence. Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir.1981). The purpose of our

review is limited to determining whether, upon consideration of the record as a whole, there is substantial evidence to support the Secretary's findings of fact. *Goldman v. Folsom,* 246 F.2d 776, 778 (3d Cir.1957). While we recognize the deference to administrative decisions implied in the substantial evidence rule, there is simultaneously a responsibility in a reviewing court to assure that administrative conclusions are rational. *Universal Camera Corp. v. Labor Board,* 340 U.S. 474, 490, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951); *Cotter v. Harris,* 642 F.2d 700, 605 (3d Cir.1981); *Smith v. Califano,* 637 F.2d 968 (3d Cir.1981).

Accordingly, the only issue before the court is whether the final decision of the Secretary that the child is not entitled to child's insurance benefits on the wage earner's account is supported by substantial evidence and rational conclusions.

The Social Security Act provides for the payment of child's insurance benefits where a child is unmarried, under 18 years of age, and dependent upon the deceased wage earner at the time of death. 42 U.S.C. § 402(d). For the purposes of determining whether an applicant is the child of the deceased wage earner under the Act, the law requires the Secretary to apply the law of devolution of intestate personal property of the state in which the wage earner was domiciled at the time of death. An applicant who would attain the status of a child under such law is deemed a child for benefit purposes under the Social Security Act. 42 U.S.C. § 416(h)(2)(A).

The Act also allows for an applicant who is not deemed to be the child of the wage earner under the applicable state law to be deemed eligible for benefits where the insured wage earner has during his lifetime (1) acknowledged in writing that the applicant is his child; or (2) had been decreed by a court to be the father of the applicant; or (3) had been ordered by a court to contribute to the support of the applicant because the applicant is his son or daughter; or (4) is shown by evidence satisfactory to the Secretary to have been the father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died. 42 U.S.C. § 416(h)(3)(C).

Having reviewed the record of this case in light of the section of the Social Security Act outlined above, we find that the Secretary's determination that the child is not the child of the wage earner is supported by substantial evidence.

At the time of his death the wage earner was domiciled in Pennsylvania (Tr. 42). Therefore, under 42 U.S.C. § 416(h)(2)(A), Pennsylvania law of intestate succession is controlling in this case.

Prior to November 26, 1978, Section 2107 of the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, No. 164, § 2, 20 Pa.C.S.A. 2107, provided that a person born out of wedlock was to be "considered the child of his mother but not his father." *Estate of Hoffman,* 320 Pa.Super 113, 466 A.2d 1087, 1089 (1983). "This provision was declared unconstitutional in a consent decree filed on May 30, 1978, *Fernandez v. Shapp,* 74-2959 (E.D.Pa.1978), because it improperly discriminated against illegitimate children. *See Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977)." *Adens for Green v. Schweiker,* 773 F.2d 545, 547-548 (3d Cir.1985).

In response to the Supreme Court decision in *Trimble v. Gordon, supra,* the legislature in Pennsylvania enacted an amendment to Section 2107 of the Code which provided, inter alia, as follows:

(c) Child of father—For purposes of descent by, from and through a person born out of wedlock, he shall be considered the child of his father when the identity of the father has been determined in any of the following ways:

(1) If the parents of a child born out of wedlock shall have married each other.

(2) If during the lifetime of the child, the father openly holds out the child to be his and receives the child into his home, or openly holds the child out to be his and provides support for the child which shall be determined by clear and convincing evidence.

(3) If there is clear and convincing evidence that the man was the father of the child, which may include a prior court determination of paternity.

20 Pa. C.S.A. § 2107 (as amended 1978). Section 5 of the amending statute provides:

"This act shall be effective immediately, but its provisions shall not apply to wills or conveyances executed prior to its effective date *or to rights from and through a child's father if the father had died prior to the effective date of this act.*" [Nov. 26, 1978]

20 Pa. C.S.A. § 2107 (as amended 1978) (emphasis added). Although section 5 of the statute appears to render the provisions as amended inapplicable to the case *sub judice* due to the fact that the wage earner died in 1970, it does not follow that the plaintiff's claim is barred by the provision of the prior statute, which has been declared unconstitutional. In *Adens for Green v. Schweiker*, 773 F.2d 545, 548 (3d Cir.1985), the court held that in deciding whether an illegitimate child is entitled to Social Security survivor's benefits, the unconstitutional provision of the intestacy law can not be applied. The court adopted the rule of neutral extension as employed in *Estate of Hoffman*, 320 Pa.Super. 113, 466 A.2d 1087 (1983), judicially excised the unconstitutional clause from the statute, and held that if a claimant for social security benefits establishes parentage by the deceased wage earner she would be eligible to inherit from the wage earner, and thereby be entitled to child's insurance benefits on the wage earner's account. *Adens for Green v. Schweiker, supra* at 548. Thus in the case *sub judice*, the burden is upon the plaintiff to prove that the deceased wage earner is the father of the child.

In *Estate of Hoffman, supra*, the Superior Court of Pennsylvania enunciated how the clear and convincing standard for demonstrating intestate succession should be applied. That case is similar to the case *sub judice* in that it involved a paternity claim in which the alleged father had died before the effective date (1978) of the amendment to the Pennsylvania intestate

law. The court noted that the trial court had required proof of paternity by clear and convincing evidence, i.e., had applied the same standard as would be applied under the new statute, and the trial court's ruling on the standard of proof was not challenged on appeal. The court "observe[d], nevertheless, that claims of paternity made after the lips of the alleged father have been sealed by death are in that class of claims which must be subjected to the closest scrutiny and which can be allowed only on strict proof so that injustice will not be done. *Estate of Hoffman, supra*, 466 A.2d at 1089.

█ In the case *sub judice*, the only affirmative evidence of paternity offered by the plaintiff was testimony from herself, her daughter and the wage earner's younger brother. No independent written documentation either supporting or even suggesting a finding of paternity was offered. The wage earner was not identified as the father of the child on the child's birth certificate (Tr. 101). At the time of the child's birth, plaintiff used her maiden name in identifying herself as the child's mother (Tr. 101), and she chose to give the child the surname of her first husband, Louis Butler. She chose this surname over her maiden name, the name she used for herself; more importantly, she chose it over the surname of the wage earner in spite of her alleged belief that the wage earner was the child's father. Additionally, the plaintiff's daughter indicated that plaintiff's first husband, Louis Butler, continued to live in the vicinity where the plaintiff lived and visited the plaintiff's home occasionally (Tr. 83–84). This fact coupled with the plaintiff's decision to give the child her first husband's surname substantially supports the ALJ's observation that "it is as reasonable to conclude he was the putative father as to presume the deceased wage earner's paternity." (Tr. 43).

We also find that the testimonial evidence offered by the plaintiff, her daughter and the wage earner's brother do not achieve the level of strict proof that *Estate of Hoffman, supra*, suggests is necessary.

When questioned by the ALJ as to why she waited approximately thirteen years before filing for benefits on the wage earner's account, the plaintiff testified that she had tried to be self-sufficient but as her son grew and started to need more things, she had found it had become financially necessary for her to seek help. (Tr. 55 and 61). However, the plaintiff also testified that she was on welfare at the time of her pregnancy and continued to receive welfare payments after the birth of the child (Tr. 60–61). Given the inconsistency of these statements, we can not accept the plaintiff's explanation for the delay and we agree with the ALJ's conclusion based on the facts and common sense that, "it should be noted she testified she had just begun a college program at the time of her pregnancy (2–year certificate) and so it is reasonable to assume the benefits would have also been useful at that time as well where she had relied on Public Assistance for support" (Tr. 43).

In testifying before the ALJ, the plaintiff's daughter conceded that the wage earner had not in fact acknowledged paternity to her; she herself merely reached this conclusion from his statement that since she loved him and she loved her mother, she would also love the expected baby (Tr. 85). As noted by the ALJ, the plaintiff's daughter "was 17 at the time of the child's birth, old enough to be aware of who was the father, and certainly of an age when the wage earner would have openly admitted to her his paternity" (Tr. 44).

The testimony of Henry C. Daniels, a brother of the deceased wage earner, that the wage earner had told him he was the child's father was considered "sparse and not fully credible" by the ALJ (Tr. 44). Having reviewing the testimony, we find there was substantial evidence for the ALJ's conclusion. The testimony by Mr. Daniels was vague and uncertain with regard to certain facts that a close relative should have knowledge. He did not know if his brother was married or divorced during his relationship with the plaintiff; however, he believed he was divorced (Tr. 67). The death certificate indicates the wage earner was in fact married during this time (Tr. 100). Likewise, Mr. Daniels testified that his brother was a construction worker but he didn't know where he was working. Given such uncertainties, it is reasonable for the ALJ to call into question the veracity of all the witness' statements.

In reviewing the testimonial evidence presented and noting the lack of written documentation of the paternity of the wage earner in this case, we agree with the Secretary's determination that under Pennsylvania law the evidence proffered by the plaintiff fails to establish by a clear and convincing standard that the wage earner was the father of the child pursuant to 42 U.S.C. § 416(h)(2)(A). Therefore, the Secretary reasonably concluded that the child was not entitled to child's insurance benefits.

█ Finally, the Secretary also determined that plaintiff's son is not "the child" of the wage earner pursuant to section 216(h)(3)(C) of the Social Security Act. In a Child Relationship Statement completed by the plaintiff, it was stated, inter alia, that the wage earner was never decreed by a court to be the child's father, was never ordered by a court to contribute to his support because the child was decreed to be his son, nor did he ever acknowledge the child as his own in writing (Tr. 105–106). Additionally, the record evidence did not establish to the satisfaction of the Secretary that the wage earner was the father of the child *and* living with the plaintiff or contributing to her support at the time of his death. *See* 42 U.S.C. § 416(h)(3)(C)(ii). The plaintiff testified that she never lived with the wage earner (Tr. 56), and that she was on welfare at the time of her pregnancy (Tr. 60). There is no documentary evidence that the wage earner contributed to plaintiff's support on a regular basis. The plaintiff did testify that the wage earner provided contributions of between $20.00 and $25.00 every other week and bought her some maternity clothes (Tr. 62–63). However, this testimony did not establish to the satisfaction of the ALJ that the

wage earner was the child's father (Tr. 44). As 42 U.S.C. § 416(h)(3)(C)(ii) mandates that it is a two part test, i.e., the record evidence must establish paternity to the satisfaction of the Secretary *and* the wage earner must have contributed to [plaintiff's] support, we find the Secretary's denial of plaintiff's claim was proper and supported by substantial evidence. Therefore, we grant the defendant's motion for summary judgment, and we deny the plaintiff's cross-motion.

### ORDER

The Motion of the Plaintiff for Summary Judgment is DENIED.

The Motion of the Defendant for Summary Judgment is GRANTED.

Judgment is entered in favor of the defendant and against the plaintiff.

IT IS SO ORDERED.